## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | | |
|---|---|---|
| KUNTERRIUS WOODARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV619-120 |
| | ) | |
| BRIAN ADAMS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AND REPORT AND RECOMMENDATION

Proceeding *pro se*, plaintiff, who is incarcerated at Smith State Prison in Glennville, Georgia, brings this action under 42 U.S.C. § 1983 alleging state tort claims and various constitutional violations against prison officials. Doc. 1. The Court granted plaintiff's motion for leave to proceed *in forma pauperis* (IFP), doc. 5, and he has provided all requested documentation, docs. 6, 7. Plaintiff also filed a "Supplemental Complaint" amending his access to courts claim. Doc. 8. The Court now screens plaintiff's Complaint and "Supplemental Complaint" under 28 U.S.C. § 1915A.[1]  *See Faulk v. City of Orlando*, 731 F.2d 787, 790–91

---

[1]  The Prison Litigation Reform Act of 1995 (PLRA), Pub. L. No. 104-134, 110 Stat. 1321-71, sets forth procedures governing the filing of complaints in federal court by prisoners and other detainees. In cases seeking redress from a government entity or its officials, the PLRA requires a preliminary screening in order to "identify

(11th Cir. 1984) (construing *pro se* plaintiff's three pleadings together in determining whether plaintiff stated claim).

## BACKGROUND[2]

In his Complaint, Plaintiff alleges that on November 6, 2019, defendants Johnson, Bennett, Cheeseboro, and McDaniel came to his cell, and, without forewarning, one of them, apparently Johnson, shot plaintiff twice with a taser and then instructed defendant Bennett to spray plaintiff with a searing chemical agent called "OC." Doc. 1 at 3. Defendant Bennett complied and fired a canister of OC into plaintiff's cell through the tray flap. *Id.*

Plaintiff alleges that during this incident, defendants Cheeseboro and McDaniel failed to intervene, and afterwards plaintiff was denied medical attention and the opportunity to decontaminate. *Id.* at 4. Plaintiff alleges the incident violated the Georgia Department of

---

cognizable complaints" and to dismiss, prior to service, any complaint that is "frivolous, malicious, or fails to state a claim upon which relief may be granted" or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A.

[2]   Because the Court applies Fed. R. Civ. P. 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278–79 (11th Cir. 2001), allegations in the complaint are taken as true and construed in the light most favorable to the plaintiff, *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011). Conclusory allegations, however, fail. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a Rule 12(b)(6) dismissal).

Corrections' use of force policy and caused him significant pain for several days (through November 10, 2019), preventing him from sleeping and concentrating. *Id.*

Plaintiff also alleges he repeatedly witnessed the use of excessive and unnecessary force against prisoners by prison staff since his arrival at Smith State Prison in April 2019. *Id.* at 4–5. In addition to the four officers present during the November 6, 2019 incident, Plaintiff names Brian Adams (Warden of Smith State Prison) and McFarland (Deputy Warden for Security at Smith State Prison) as defendants and alleges they are also liable for the incident. *Id.* at 2, 7.

Plaintiff, a participant in Smith State Prison's Tier II program, also contends there is no access to the law library or legal assistance on Tier II and that the Tier II program denies prisoners their civil rights. *Id.* at 5. On February 3, 2020, plaintiff filed a "Supplemental Complaint," elaborating on his access to courts claim and adding Timothy C. Ward, Commissioner of the State of Georgia's Department of Corrections, and Tracy Hilton, Smith State Prison's Education Media Resource Specialist, as defendants. Doc. 8 at 1.

## ANALYSIS

### I.     Defendants Adams and McFarland-§ 1983 claims

The Court first examines plaintiff's § 1983 claims against defendants Adams and McFarland, wherein he seeks to hold these two defendants liable under a deliberate indifference theory for the events of November 6, 2019.  Doc. 1 at 7.  Plaintiff does not allege either of these individuals was present during the November 6, 2019 incident.  In fact, it appears he seeks to hold defendants Adams and McFarland liable by virtue of their positions as the Warden and the Deputy Warden for Security at Smith State Prison.

It is well-settled that "[s]ection 1983 claims may not be brought against supervisory officials solely on the basis of vicarious liability or *respondeat superior*."  *Averhart v. Warden*, 590 F. App'x 873, 874 (11th Cir. 2014) (citing *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010)).  Rather, "[a] supervisor can be held liable under § 1983 if he personally participates in the alleged constitutional violation or if a causal connection exists between his acts and the constitutional infirmity."  *Id.*

> A causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice

4

> of the need to correct the alleged deprivation and he fails to
> do so; when the supervisor's improper custom or policy
> leads to deliberate indifference to constitutional rights; or
> when facts support an inference that the supervisor
> directed the subordinates to act unlawfully or knew that the
> subordinates would act unlawfully and failed to stop them
> from doing so.

*Douglas v. Yates*, 535 F.3d 1316, 1322 (11th Cir. 2008).

Plaintiff, in his Complaint, contends there is "an informal policy in effect at Smith authorizing unfettered and arbitrary use of force, against prisoners, by the prison staff" and states that since his arrival at Smith State Prison in April 2019, he has "repeatedly witnessed staff members of practically all available ranks use unnecessary or otherwise excessive force against prisoners." Doc. 1 at 4. Through these allegations, plaintiff may be attempting to claim a history of widespread abuse at Smith State Prison.

"The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). Further, "[a] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556

U.S. 662, 676 (2009).  While plaintiff need not provide "detailed factual allegations," he must state more than "an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* at 678.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007).

Here, plaintiff provides no factual detail about the other incidents of allegedly excessive force he witnessed at Smith State Prison, nor does he sufficiently allege defendants Adams and McFarland were actually aware of these other instances of excessive force.  In the absence of factual descriptions of the other alleged incidents, the allegation that the force used was "excessive" remains wholly conclusory.  His allegation of Adams and McFarland's knowledge of the allegedly unconstitutional character of these incidents, too, remains conclusory: plaintiff simply contends these two defendants should be liable due to their failure to "curb the known pattern of physical abuse of prisoners by defendant Johnson and Bennett."  Doc. 1 at 7.  This allegation is conclusory at best and cannot serve as the basis for a § 1983 claim against defendants Adams and

McFarland.  Accordingly, the Court should **DISMISS** plaintiff's §1983 claims against defendants Adams and McFarland.

### II. Plaintiff's State Law Claims

Plaintiff also alleges state law claims of assault, battery, negligence, and intentional infliction of emotional distress against defendants Adams, McFarland, Johnson, Bennett, Cheeseboro, and McDaniel arising out of the November 6, 2019 incident.  Doc. 1 at 1, 6–7.  Federal courts may exercise supplemental jurisdiction over state law claims that "form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  However, this Court is also under an obligation to dismiss, prior to service, any claim that "seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b).  Accordingly, the Court must consider plaintiff's state law tort claims in the context of the immunity provisions of The Georgia Tort Claims Act ("GTCA"), O.C.G.A. § 50-21-20 to -37.

The GTCA "constitutes the exclusive remedy for any tort committed by a state officer or employee."  O.C.G.A. § 50-21-25(a).  According to plaintiff's Complaint, the defendants for his state law claims in this case are employees or officers of the Georgia Department of Corrections.  Doc.

1 at 2–3.  Under the GTCA, "[a] state officer or employee who commits a tort while acting within the scope of his or her official duties or employment is not subject to lawsuit or liability therefor."  O.C.G.A. § 50-21-25(a).[3]  This immunity applies even when the officer is accused of committing unauthorized torts that are intentional or malicious.  *See Ridley v. Johns*, 552 S.E.2d 853, 854 (Ga. 2001); *Tootle v. Cartee*, 634 S.E.2d 90, 93 (Ga. App. 2006).

Here, plaintiff's allegations indicate defendants were acting within their scope of employment at the time of the incident.  According to plaintiff, the defendants for his state law claims all worked in the Tier II program at Smith State Prison or otherwise had oversight responsibilities at the prison.  Doc. 1 at 2–3.  Moreover, plaintiff specifically states the defendants "acted under color of state law at all times relevant to this Complaint."  *Id.* at 3.  As plaintiff's Complaint indicates defendants Adams, McFarland, Johnson, Bennett, Cheeseboro,

---

[3] State employees are considered to be acting within the "scope of their employment" when their conduct was performed in "the regular duties of their employment, during their regular hours of employment, at their regular site of employment."  *Shekhawat v. Jones*, 746 S.E.2d 89, 93 (Ga. 2013); *see also Mattox v. Bailey*, 472 S.E.2d 130, 130–31 (Ga. App. 1996) (holding state correctional officer acted within scope of his official duties and thus was entitled to immunity under GTCA when officer allegedly beat inmate while escorting inmate across prison grounds).

and McDaniel were state officers or employees who were acting within the scope of their employment at the time of the alleged incident, pursuant to the GTCA, these defendants cannot be liable for plaintiff's state tort claims.  O.C.G.A. § 50-21-25(a).

The GTCA also provides that tort claimants must "name as a party defendant only the state government entity for which the state officer or employee was acting and shall not name the state officer or employee individually."  O.C.G.A. § 50-21-25(b).  In other words, if a state officer or employee is sued for a tort committed while acting within the scope of his or her official duties or employment, "the state government entity for which the state officer or employee was acting must be substituted as the party defendant."  *Id.*  However, substituting the Georgia Department of Corrections for the individually named defendants in this action cannot save plaintiff's state tort claims, as the GTCA does not waive sovereign immunity for tort actions brought against the Georgia Department of Corrections in federal court.  *See* O.C.G.A. § 50-21-23(b) ("The [State of Georgia and its departments do] not waive any immunity with respect to actions brought in the courts of the United States."); *Williams v. Ga. Dep't of Corr.*, 2012 WL 2839454, at *5 (S.D. Ga. May 2, 2012).  As a result,

even if the Georgia Department of Corrections was substituted for the individually named defendants on plaintiff's state law claims, it would still be immune from suit in federal court under longstanding principles of Eleventh Amendment immunity. *See Jones v. Ga. Dep't of Corr.*, 763 F. App'x 906, 907 (11th Cir. 2019) ("The Georgia Department of Corrections enjoys immunity from suit in a federal court under the Eleventh Amendment."); *Stevens v. Gay*, 864 F.2d 113, 115 (11th Cir. 1989) ("The Eleventh Amendment bars . . . action against the Georgia Department of Corrections and Board of Corrections.").

Moreover, the State of Georgia and its departments cannot have liability for losses resulting from an assault or battery. O.C.G.A. § 50-21-24(7) ("The state shall have no liability for losses resulting from . . . [a]ssault, battery.") Here, all of plaintiff's state law claims arise from acts of battery, *i.e.*, the alleged spraying and tasering of plaintiff.[4] Accordingly, even if plaintiff could substitute the State of Georgia or the Georgia Department of Corrections as a party defendant, these entities would still be immune from damages arising from the November 6, 2019

---

[4] "An unlawful touching of a person's body is actionable even if the unlawful touching is indirect, as by throwing an object or substance at the person." *Lawson v. Bloodsworth*, 722 S.E.2d 358, 360 (Ga. App. 2012) (citation omitted).

incident.   For these reasons, plaintiff's state law claims should be **DISMISSED** from this action.

### III.   § 1983 Claims for Monetary Damages Against Defendants in Their Official Capacities

Plaintiff also cannot sustain a § 1983 claim for monetary damages against defendants in their official capacities.  *See* doc. 1 at 3; doc. 8 at 2 (alleging official capacity claims against defendants).  As discussed in the preceding section, states are immune from private suits based on the Eleventh Amendment and traditional principles of state sovereignty. *Alden v. Maine*, 527 U.S. 706, 712–13 (1999).  Section 1983 does not abrogate the well-established immunities of a state from suit without its consent.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 67 (1989). Because a lawsuit against a state officer in his official capacity is "no different from a suit against the [s]tate itself," such a defendant is immune from suit for monetary damages under Section 1983.  *Id.* at 71.

Here, the State of Georgia would be the real party in interest in a suit against defendants in their official capacities, as they are employees of the Georgia Department of Corrections.  Accordingly, the Eleventh Amendment immunizes these actors from suit in their official capacities. *See Free v. Granger*, 887 F.2d 1552, 1557 (11th Cir. 1989).  Absent a

waiver of that immunity, plaintiff cannot sustain any constitutional claims for monetary relief against defendants in their official capacities, and, therefore, the Court should **DISMISS** such claims.

### IV. Access to Courts Claim

Plaintiff also attempts to bring an access-to-courts claim against defendants Adams and Hilton, alleging he has no ability to research the law or otherwise stay abreast of developments in the law as a result of his placement on Tier II. Doc. 1 at 5; Doc. 8. He alleges Tier II housing units do not have access to a law library or legal assistance from persons trained in the law. *Id.* He also states it is difficult to obtain adequate supplies of envelopes, paper, and pens in order to draft and mail legal documents. Doc. 8 at 2, 4. In addition to seeking monetary damages from defendants Adams and Hilton, plaintiff requests injunctive relief from defendant Ward on his access-to-courts claim. Doc. 8 at 4–5.

The right of access to the courts encompasses "the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis v. Casey*, 518 U.S. 343, 356 (1996). However, this right does not automatically translate into a right to a law library or other forms of legal assistance. *Id.* at 350 ("*Bounds* established

12

no such right [to a law library or to legal assistance].").  In order to state an access to courts claim, any alleged infringement of plaintiff's right of access to the courts "must have frustrated or impeded [his] efforts to pursue a nonfrivolous legal claim." *Bass v. Singletary*, 143 F.3d 1442, 1445 (11th Cir. 1998).  However, there is no requirement that states enable a prisoner to "*litigate effectively*" once in court. *Lewis*, 518 U.S. at 354.

The Court need not analyze the merits of plaintiff's access to courts claim at this time, as the record shows he failed to properly exhaust the claim prior to bringing it in this Court.  Section 1997e(a) states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

"[W]hen a state provides a grievance procedure for its prisoners, . . . an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." *Brown v. Sikes*, 212 F.3d 1205, 1207 (11th Cir. 2000).  "The plain language of the statute makes exhaustion a

precondition to filing an action in federal court." *Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000) (citation omitted).

While failure to exhaust is considered an affirmative defense that can be waived by a defendant, *see Brooks v. Warden*, 706 F. App'x 965, 969–70 (11th Cir. 2017), if the face of the Complaint indicates exhaustion did not occur, the Court has the authority to *sua sponte* dismiss the Complaint. *See Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) ("A complaint may be dismissed if an affirmative defense, such as failure to exhaust, appears on the face of the complaint."); *see also Anderson v. Donald*, 261 F. App'x 254, 256 (11th Cir. 2008) ("The allegations in [plaintiff's] complaint sufficed to establish that he failed to exhaust his administrative remedies, and thus, the district court properly dismissed his complaint."); *Okpala v. Drew*, 248 F. App'x 72, 73 (11th Cir. 2007) ("[T]he district court did not err by dismissing the complaint, pursuant to § 1915A, because [plaintiff's] failure to exhaust administrative remedies—an affirmative defense—was clear from the face of the complaint.").

Plaintiff first raised his access to courts claim in his original Complaint, filed on December 20, 2019. Doc. 1 at 5. Then, on February

3, 2020, plaintiff submitted his "Supplemental Complaint," acknowledging he did not file his grievance concerning his access to courts claim until December 2, 2019, a mere eleven days prior to signing his initial Complaint in this action.[5]  Doc. 8 at 3; Doc. 8-5.  A review of this timeline reveals plaintiff's access to courts claim was not fully exhausted when he brought this suit.

"To exhaust administrative remedies in accordance with the PLRA, prisoners must properly take each step within the administrative process." *Bryant v. Rich*, 530 F.3d 1368, 1378 (11th Cir. 2008) (citation and quotation marks omitted).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006).  The Georgia Department of Corrections' grievance procedure is a two-step process, requiring an original grievance and an

---

[5]  The applicable date for exhaustion purposes under § 1997e(a) is the date plaintiff signed the Complaint, December 13, 2019.  Doc. 1 at 8.  *See Merilien v. Caldwell*, 2020 WL 5763609, at *2 (S.D. Ga. Sept. 28, 2020) ("Concluding a prisoner 'brings' a civil action when he signs the complaint instead of when the clerk files the complaint is consistent with the purpose of § 1997e(a), which is to require exhaustion before a prisoner initiates litigation to avoid premature interruption of the administrative process.").

appeal. *See* doc. 8-6 at 7 (Georgia Department Of Corrections Statewide Grievance Procedure, eff. 6/28/2018).

The inmate can initiate the second step of the grievance procedure—the appeal—only after one of the following has occurred: (1) the grievance is rejected; (2) the inmate receives the Warden's/Superintendent's response to the grievance; or (3) the time allowed for the Warden's/Superintendent's decision has expired. Doc. 8-6 at 8, 11. As noted in plaintiff's "Supplemental Complaint," the Warden has "40 calendar days from the date the Offender gave the Grievance Form to the Counselor to deliver the decision to the Offender." Doc. 8 at 3; *see also* doc. 8-6 at 10.

On January 20, 2020, plaintiff stated in his "Supplemental Complaint" that he had "yet to receive a Response to his [December 2, 2019] grievance." Doc. 8 at 3. Accordingly, plaintiff's pleadings indicate he could not possibly have initiated the appeal step of his access-to-courts grievance when he first brought this action in December 2019, as he had not yet received the Warden's/Superintendent's decision on the grievance and the forty-day time period for responding had not yet expired. As plaintiff's access-to-courts claim was not fully exhausted when he

initiated this action, it is due to be dismissed. *See Sewell v. Ramsey*, 2007 WL 201269, at *4 (S.D. Ga. Jan. 24, 2007) (dismissing action where "plaintiff [was] still awaiting a response from the warden regarding his grievance" and "remains in the process of exhausting his administrative remedies.").

Plaintiff's attempt to cure his failure to exhaust through the filing of a "Supplemental Complaint" cannot save his claim. "The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." *Smith v. Terry*, 491 F. App'x 81, 83 (11th Cir. 2012). In *Smith v. Terry*, a plaintiff attempted to cure an exhaustion defect in his original complaint by later seeking to amend or supplement his complaint. *Id.* at 83. The court, in affirming the lower court's dismissal of the action, concluded the plaintiff's attempt to amend or supplement his original complaint "did not change the important historical fact: his administrative remedies were unexhausted when he filed his original complaint." *Id.* Similarly, in this case, plaintiff's attempt to demonstrate exhaustion of his access to courts claim via his "Supplemental Complaint," *see* doc. 8 at 4 (stating "Plaintiff has exhausted his

administrative remedies with respect to all claims and all defendants"), does not change the fact that the claim was unexhausted when he initially brought it. *See Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) ( "[A] court may not excuse a failure to exhaust."). As a result, plaintiff's access to courts claim, as well as his requests for a permanent and preliminary injunction regarding such claim, *see* doc. 8 at 4, should be **DISMISSED**.

## V. § 1983 Claims Against Defendants Johnson, Bennett, Cheeseboro, and McDaniel in Their Individual Capacities

As a final matter, the Court reviews plaintiff's § 1983 claims against defendants Johnson, Bennett, Cheeseboro, and McDaniel in their individual capacities, which stem from the alleged tasering and spraying of plaintiff in his cell and the failure to provide him medical care following the incident.

### A. Excessive Force Claims

In *Hudson v. McMillian*, the Supreme Court recognized the "settled rule that the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." 503 U.S. 1, 5 (1992) (citations and quotations omitted). When prison officials are accused of using excessive force, "[t]he 'core judicial inquiry,' [is] not whether a certain quantum of injury was sustained, but rather

'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson*, 503 U.S. at 7).  "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson*, 503 U.S. at 9.

"In determining whether malicious and sadistic intent existed, a variety of factors are considered including: the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *McReynolds v. Ala. Dep't of Youth Servs.*, 204 F. App'x 819, 822 (11th Cir. 2006) (citations and quotations omitted).

The Court concludes plaintiff's claims of excessive force against defendants Johnson and Bennett should survive its § 1915A screening. Plaintiff, in his Complaint, alleges defendants Bennett and Johnson came to his cell, and, without forewarning or verbal exchange, Johnson tased plaintiff.  Doc. 1 at 3.  Then, per Johnson's instructions, Bennett sprayed plaintiff with a chemical agent causing plaintiff to endure

painful burning sensations throughout his body.  *Id.*  Based on these allegations, plaintiff's excessive force claims are sufficiently pleaded to warrant service upon the defendants.

### B. Failure to Intervene Claims

The Court also finds plaintiff's claims of failure to intervene should be served on defendants Cheeseboro and McDaniel.  "Prison correctional officers may be held directly liable under § 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence."  *Terry v. Bailey*, 376 F. App'x 894, 896 (11th Cir. 2010) (citing *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998)).  "[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable for his nonfeasance."  *Velazquez v. City of Hialeah*, 484 F.3d 1340, 1341 (11th Cir. 2007).

Here, plaintiff alleges defendants Cheeseboro and McDaniel, although present at plaintiff's cell when defendants Johnson and Bennett tased and sprayed him, failed to intervene or otherwise prevent the alleged assault.  Doc. 1 at 3–4.  The Court concludes these allegations are sufficient to allege that defendants Cheeseboro and McDaniel failed to

intervene to prevent the allegedly excessive use of force by defendants Johnson and Bennett.

## C. Deliberate Indifference to Health and Safety Claims

Plaintiff also alleges defendants Johnson, Bennett, Cheeseboro, and McDaniel denied him medical care and an opportunity to decontaminate following the November 6, 2019 incident. Doc. 1 at 4. He alleges he endured an "excruciatingly burning sensation throughout his entire body . . . which did not begin to subside, palpably, until sometime on November 10, 2019." *Id.*

Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prisoner can state a valid claim under the Eighth Amendment "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care . . . ." *Id.* at 104–05. To prevail on such a claim of deliberate indifference, a plaintiff must show: (1) a serious medical need; (2) deliberate indifference to that need on the part of the defendant; and (3) causation. *See Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009). The element of deliberate

indifference entails "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." *Goebert v. Lee Cty.*, 510 F.3d 1312, 1327 (11th Cir. 2007) (quotation and brackets omitted).

Here, the Court concludes plaintiff's allegations concerning the failure to provide him with care following the November 6, 2019 incident can be construed as Eighth Amendment claims of deliberate indifference to plaintiff's health and safety and should be served on defendants Johnson, Bennett, Cheeseboro, and McDaniel.

## VI. Service

Since plaintiff has sufficiently alleged § 1983 claims against defendants Johnson, Bennett, Cheeseboro, and McDaniel, his pleadings are due to be served on these defendants. Since plaintiff was authorized to proceed *in forma pauperis*, the Court must order that the United States Marshal, or his deputy, serve the defendants. *See* Fed. R. Civ. P. 4(c)(3). To that end, the Court will implement, in part, the service procedure deployed in *Simmons v. Five Star Quality Care, Inc.*, 2014 WL 6603759, at * 4 (S.D. Ga. Nov. 19, 2014), *adopted*, 2015 WL 307003 (S.D. Ga. Jan. 23, 2015). That service process unfolds in stages.

First, the Clerk is **DIRECTED** to prepare a USM 285 form and a service waiver package for each defendant.[6]  Fed. R. Civ. P. 4(d)(1).  The service waiver package must include, for each defendant: a Rule 4 Notice of Lawsuit and Request to Waive Service of a Summons; two copies of a Waiver of the Service of Summons form; an envelope addressed to the Clerk of Court with adequate first class postage for use by the defendant for return of the waiver form; copies of the Complaint, doc. 1, and "Supplemental Complaint", doc. 8; and a copy of this Order and Report and Recommendation.  The Clerk is **DIRECTED** to forward the USM 285 form and the service waiver package to the Marshal.

Next, the Marshal is **DIRECTED** to mail the service waiver package to the defendants at their last known address, as detailed in the plaintiff's pleadings[7]:

---

[6]  Although Rule 4's Marshal-service mandate is clear, the Court has an interest in preserving resources and minimizing the burden on the Marshal's support staff, and thus finds it appropriate to first attempt to secure defendants' waiver of formal service.  *See, e.g., Dunn v. Federal Express*, 2014 WL 1028949 at *2-3 (N.D. Ga. Mar. 14, 2014) (directing clerks to attempt to secure service waiver, and directing USMS service "[i]n the event Defendant does not return the Waiver of Service form to the Clerk of Court" within the specified period).

[7]  If plaintiff has additional information regarding the defendants' identities or locations, he shall so notify the Court.  The failure to provide enough information so that defendants can be located with reasonable effort may result in a lack of service and ultimately dismissal of plaintiff's claims.  Fed. R. Civ. P. 4(m); *Richardson v. Johnson*, 598 F.3d 734, 740 (11th Cir. 2010).

Smith State Prison
P.O. Box 726
9676 Hwy 301, North
Glennville, Ga. 30427

Each defendant is under a duty to avoid unnecessary costs for personally serving the summons.  If any defendant fails to comply with the mailed request for waiver of service, he or she must bear the costs of personal service unless good cause can be shown for failure to return the Waiver of Service form.

Should any defendant fail to waive service within thirty (30) days following the date the service waiver package was mailed (the Clerk shall docket that act), the Clerk is **DIRECTED** to prepare and transmit to the Marshal a USM 285 form and a service package for that defendant.  The service package must include a summons directed to the defendant, copies of the Complaint, doc. 1, and "Supplemental Complaint," doc. 8, plus a copy of this Order and Report and Recommendation.  Fed. R. Civ. P. 4.  The Marshal is then **DIRECTED** to promptly personally serve the defendant with the service package.  The executed waiver form or the completed USM 285 form shall be filed with the Clerk.  *See Dunn v. Fed. Express*, 2014 WL 1028949, at *3 (N.D. Ga. Mar. 14, 2014).

Once a defendant is served, plaintiff will then be responsible to serve that defendant (through counsel, if any defendant is represented) with a copy of every future pleading or other document which he files with the Court. *See* Fed. R. Civ. P. 5. He also must include with each paper so filed a certificate stating the date on which he mailed an accurate copy of that paper to the defendant or its counsel. This Court will disregard any papers submitted which have not been properly filed with the Clerk or which do not include a certificate of service.

Finally, plaintiff also must keep the Court and any defendant advised of his current address at all times during the pendency of this action. Failure to do so may result in dismissal of his Complaint. He also must litigate this case, conduct and respond to any discovery, and comply with both the Federal Rules of Civil Procedure and this Court's Local Rules, which are available online:

https://www.gasd.uscourts.gov/civil-cases-local-rules.

## CONCLUSION

For the reasons explained above, the Court **RECOMMENDS** all of plaintiff's state law claims be **DISMISSED**, and further **RECOMMENDS** the Court **DISMISS** plaintiff's claims against

defendants Adams, McFarland, Hilton, and Ward, as well as any claims for monetary damages against defendants Johnson, Bennett, Cheeseboro, and McDaniel in their official capacities.[8]

The Court, however, finds the following claims survive this Court's review under § 1915A and are approved for service:

(1)   plaintiff's Eighth Amendment claims of excessive force against defendants Johnson and Bennett in their individual capacities;

(2)   plaintiff's Eighth Amendment claims of failure to intervene against defendants McDaniel and Cheeseboro  in their individual capacities; and

(3)   plaintiff's Eighth Amendment claims of deliberate indifference to his health and safety against defendants Johnson, Bennett, Cheeseboro, and McDaniel in their individual capacities based on their alleged denial of medical attention and failure to provide plaintiff a reasonable opportunity to decontaminate following the November 6, 2019 incident.

Meanwhile, it is time for plaintiff to pay his filing fee.  His Prisoner

---

[8]  To the extent plaintiff believes he can resuscitate any claims, he remains free to submit an Amended Complaint during the time period for filing objections if he believes that it would cure the legal and factual defects discussed above. *See Willis v. Darden*, 2012 WL 170163, at *2 n.3 (S.D. Ga. Jan. 19, 2012).

Trust Fund Account Statement reflects $0 in average monthly deposits and a $0 average monthly balance over the six-month period prior to the receipt of the Complaint.  Doc. 6.  He, therefore, owes no initial partial filing fee.  *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula).  However, his custodian shall set aside 20 percent of all future deposits to his account, then forward those funds to the Clerk each time the set aside amount reaches $10.00, until the balance of the Court's $350.00 filing fee has been paid in full.  In the event that plaintiff is transferred to another facility, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to his new custodian.  The balance due from plaintiff shall be collected by the custodian at all future facilities in accordance with the terms of this Order.  **A copy of this Order and the Consent to Collection of Fees from Trust Account, doc. 7,  shall be served upon plaintiff and his current custodian.**  The payment portion of this Order is to be implemented immediately, as it is not subject to the adoption provision of Fed. R. Civ. P. 72(b).

This Report and Recommendation (R&R) is submitted to the

district court judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.  Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties.   The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."  Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge.  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to timely file objections will result in the waiver of rights on appeal.  11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO ORDERED and REPORTED AND RECOMMENDED,** this 24th day of May, 2021.

CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA